## SAGE *vs.* SHERMAN and others.

Where a party deals with an agent, he is bound to inquire into the agent's authority, and is, therefore, presumed to be cognizant of the restrictions and limitations prescribed therein. And where the authority is in writing, the party dealing with the agent should call for such instrument and exa-mine it himself; if he neglect to do so, it is his own fault, and any failure on the part of the agent to comply with the conditions therein can not vary or affect the liability of the principals. That must be determined by con-sulting the instrument, or, in case of departure, by proof of subsequent ratification with full knowledge.

By a written contract between defendants (an association for the purchase of lands) and their agent (G.), he was to draw on one of them (S.), against a fund specifically provided by defendants for that purpose, at not less than ten days' sight, for the purchase money of such lands as he bought, the title to which was to be taken in the name of S., and to be held by him in trust for the association. G. made a purchase of lands from plaintiff for

$7000, paid him $3000 by a draft on S., and gave him two notes for the balance, payable in one and two years, with interest ; these notes were signed by G., "as attorney for" S. G. subsequently notified defendants of the transaction, but did not say whether he had given notes or drafts for the $4,000 due plaintiff, and all of the defendants, except one who was not present, assented. The deed from plaintiff had been taken in S.'s name, and transmitted to and received by him. S., when the first note fell due, declined paying it, but wrote plaintiff that a draft at four or six months would be accepted, if the amount did not exceed the sum (including drafts already paid) for which the agent was authorized to' draw. G. then made two drafts on S. for the amount of the two notes, and S. refused to accept these drafts. Plaintiff then sued defendants in assumpsit for lands sold and conveyed.

*Held*, that defendants, having paid the full amount of the agent's drafts for all other purchases made by him, have already advanced payment according to the terms of the authority given to him; and that plaintiff, chargeable with knowledge of such authority, and having in the first place chosen to take the agent's individual notes for the balance of the purchase money, can not now make defendants liable for such balance, when it is seen that the doing so would work manifest fraud and injustice to them.

*Held also*, that defendants had not ratified the agent's act by accepting plaintiff's deed, and by assenting to the credit which he gave them, inasmuch as the nature of the particular securities given by the agent for the balance of the purchase money was not disclosed.; and also because one of the defendants was not present at the time of the approval of the transaction. (a)

The agent's annexing to his name, as maker of the notes, the words "attorney for S.," did not vary the legal character of the transaction, as there was no authority for making notes in the name of S.; the addition neither bound him, nor made them any less the individual notes of the agent ; (b) and the plaintiff, being chargeable with a knowledge of the extent of the authority, must be taken to have known this at the time.

Assumpsit for lands sold and conveyed. The case turns upon the nature of the authority of the agent (Greves), who made the purchase, and gave his own securities for the balance of the purchase money.

The contract between him and the defendants (an association), and which contains the power, bears date the 4th April, 1836, and stipulated·that they should provide a sum of money in the city of Albany, not to exceed $30,000, to meet drafts to be drawn by him from time to time upon one of them (Sherman) for the purchase of lands in any of the

(a) In *The Farmers' Loan and Trust Company* v. *Walworth*, 1 Comst., 433, it was held that the ratification of part of an unauthorized transaction of an agent, or one who assumes to act as such, is a confirmation of the whole.

(b) See *Palmer* v. *Stevens*, 1 Den., 471.

western states, or territories of Michigan and Wisconsin, at not less than ten days' sight. The purchases were to be made at the discretion of the agent, and the title to the lands to be taken in the name of Sherman to be held in trust for the association. The sum of $30,000, or so much as might be invested, to remain so invested for five years unless the property be sooner disposed of by the consent of all parties The agent on receiving his authority from the association was to sell and dispose of said lands, and remit the proceeds to the said Sherman, to be divided among the parties, according to their respective interests. Three quarters of the net profits, after refunding the $30,000 and interest, to be divided between the parties advancing the fund; and the remaining quarter for the benefit of the agent, as a remuneration for his time, labor and expenses in purchasing and selling. The agent was to transmit to Sherman, once a month, a full account of all purchases made by him. Each party to the agreement was to bear all losses that might be sustained, in proportion to their respective interests.

The agent, on being released by the plaintiff, was admitted as a witness, and proved that the first purchase he made under the arrangement was from the plaintiff, for which he was to pay $7000; he paid $3000 down by a draft upon Sherman, and gave notes for the balance. Two notes signed by himself, as attorney for Sherman, for $2000 each, payable one and two years with interest, bearing date May 14th, 1836. The deed was taken in the name of Sherman, recorded in Michigan, and before the close of the year forwarded to him. All the purchases made by the agent under the agreement were made in the same week, and the whole amounted in the aggregate to the sum of $10,630, and within the same period he drew on Sherman to the amount of $11,000; and in the latter part of the summer, for $515.79 more; total, $11,515.79. He also received in the course of the summer, $1000 on account of sales, and had been at an expense chargeable to the defendants to the amount of some $250. He further stated, that he made a visit to Albany in May or first of June, after the several purchases, and gave an account of them to all the defendants, except Graham;

and that they expressed themselves satisfied; that he mentioned at the same time the credit obtained for $4000 of the purchase money going to the plaintiff, but did not mention whether he had given his notes or drafts for the same.

The plaintiff also gave in evidence a letter from Sherman to him, dated May 29, 1837, in which he acknowledged one from him of the 25th inst., and advised him that Greves had no authority to make notes in his name, or in the name of the association, and declining to pay the first note then due, but stated that a draft at four or six months would be accepted, if the amount did not exceed the sum (including drafts already paid), for which the agent was authorized to draw. The agent, on the plaintiff's communicating to him the contents of this letter, drew two drafts upon Sherman for sums, each corresponding to the amount of the notes, including interest. Due proof was made of protest of said drafts for non-acceptance, and non-payment.

When the testimony closed, the counsel for the defendants insisted that they were not bound in the way and manner claimed by the plaintiff; that he was not entitled to recover in the suit, and if it should appear that Greves had become possessed of the funds of the defendants within the purview of the agreement to an amount more than sufficient to pay for all the purchases made by him, exclusive of the balance of $4000 claimed by the plaintiff, they were entitled to a credit for the excess, and to apply it, as far as it would go, against that demand.

The judge refused so to decide, and directed a verdict for the plaintiff $5809.51. Verdict accordingly, and defendants now move for a new trial on a bill of exceptions.

*By the Court*, NELSON, Ch. J. The plaintiff having dealt with the agent of the defendants was bound to inquire into the authority under which he acted, and therefore is presumed to be cognizant of the restrictions and limitations therein prescribed; and should have seen to it, that his dealings were kept strictly within their scope and limit. As the power in this case was in writing, he should have called for that instrument and examined it for himself; if

he has neglected to do so, it was his own fault, and any failure to comply with the conditions therein, for this reason, can in no way vary or affect the liability of the principals. That must be determined by consulting the instrument, or in case of a departure, by proof of subsequent ratification with full knowledge.

It is clear, therefore, that the giving of the two notes by Greves for the balance of the purchase money, imposed no obligation upon the defendants; these were given wholly without authority, and imposed liability upon no one but himself; he stood individually responsible to the plaintiff.

Two grounds are put forth, upon either of which, it is insisted, the defendants are still liable, notwithstanding this departure from the authority.

1. That they have accepted a conveyance of the lands, and must, therefore, be regarded as having ratified the purchase, in the way and upon the terms it was made.

There is no doubt this act precludes them from disavowing the purchase, and avoiding the payment of the purchase money, as they might have done, if they had refused to accept the conveyance. But fixing an original liability upon the defendants, alone, can not help the plaintiff.

The material and controlling question in the case is, not whether they were liable, that is admitted; but whether they have not already advanced the payment, according to the terms of the power? I think they have. That instrument shows a fund provided by the defendants upon which the agent was to draw from time to time as the purchases were made. He might doubtless have drawn directly in favor of the vendor or to his order, and have made the payments in that way; or in favor of himself, and with these funds made the necessary advances and ultimate payments, as the fulfillment of the contracts of purchase may have required.

The power, obviously, contemplates that the several payments should be made in one or the other of these modes, and if in this case drafts had been given to the plaintiff for the balance of the purchase money at the time of the contract, there can be no doubt of the obligation of the defend-

ants to have met them. But he chose to take the individual notes of the agent, in no way connected with, but wholly independent of his authority, and this known to him, or at least he is chargeable with knowledge, leaving it open to the former to draw for the funds that must become necessary to meet them at maturity, and discharge his personal liability; and, which in effect, have been drawn for, and are now, for aught that appears, in his hands. At all events, the full amount has been advanced to him on drafts, over and above all other purchases that have been made.

After this, the plaintiff is not at liberty to change the form and shape which he chose to give to the provision for securing the balance of the purchase money, when we see that such change would work manifest fraud and injustice to the defendants.

2. It is further insisted in answer to the objection of departure from the authority, that the defendants approved of the same after a full disclosure by the agent of the terms and conditions upon which it was made.

One answer to this ground is, that Graham, one of the defendants, was not present, and the approval of all of them is essential to maintain the action.

But the more decisive answer is, that the nature of the particular securities given by the agent for the balance of the purchase money was not disclosed, and hence there could be no ratification of them. They were, it is true, advised that the purchase had been made; that time had been given for payment of part of the purchase money; and knew that they were responsible for such payment; so they might well have believed without this information; as, for any thing they knew or were advised to the contrary, at the time, the purchase had been made in pursuance of the authority given to the agent. I do not see that their liability is thus made any stronger, or broader, than that which arose out of the power, or, at least, resulted from the acceptance of the conveyance of the lot That bound them to provide for the ultimate payment; but which we insist has been made accordingly, by furnishing the agent who gave his own liability with the funds to meet it. As we have already stated, this

seems to have been the mode contemplated in the power, where, instead of drafts drawn at the time, in favor of the party dealing with the agent, he chooses to take the personal security of the latter, leaving him to provide the means for discharging the obligation.

It is true, the agent annexed to his name, as maker of the notes, "attorney for Watts Sherman," but that in no way changes the legal character of the transaction, as there was no pretence of authority for making notes in his name; the addition neither bound him, nor made them less the individual notes of the agent; and the plaintiff, being chargeable with a knowledge of the extent of the authority, must be taken to have known this at the time.

A present fund having been raised by the association, and the agent authorized to draw at ten days' sight for payment of all purchases made, I think the plain intent of the parties clearly was that they should be made for cash. There is no intimation in any part of the articles of association of a desire that any credit should be obtained; nor is there any express provision authorizing the agent to purchase on such terms. The whole scheme seems to be founded upon the contrary idea: else why provide the fund, and require that all the payments should be made by drafts to be drawn directly upon it? Still, I admit, as there is no express restriction in respect to the length of time for which the drafts might be drawn, doubtless they could be extended beyond the ten days specified, and still fall within the authority. But, even then, the mode of payment by drafts was a material provision, and would operate as a check upon the agent, as the holder would in the usual course of business, and for his own security, be interested in presenting them at an early day for acceptance. For, although presentation for acceptance might not be essential to preserve any liability created under the power, it would still be a step, almost of course, for more abundant caution.

New trial granted, costs abide event.